Matter of Vora (C.H.B.) (2025 NY Slip Op 50533(U))

[*1]

Matter of Vora (C.H.B.)

2025 NY Slip Op 50533(U)

Decided on April 14, 2025

Supreme Court, Kings County

Ward, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 14, 2025
Supreme Court, Kings County

In the Matter of the Application of Rajvee Vora, M.D. as the Chief of Psychiatry, Department of Psychiatry, Woodhull Hospital Center, Petitioner, For an Order authorizing the medication of and performance of all necessary labs, and EKG, upon C.H.B., a Patient at said hospital, Respondent.

Index No. 300521/2025

Suman Home, Esq.
Abrams Fensterman, LLP
Attorneys for Petitioner Woodhull Hospital Center
3 Dakota Drive
Lake Success, NY 11042
Max Kwarteng, Esq.
Mental Hygiene Legal Service
Attorneys for Respondent C.H.B.
760 Broadway
Brooklyn, NY 11206

Kerry J. Ward, J.

Upon the foregoing papers and after oral argument in this proceeding, petitioner, Rajvee Vora, M.D. (Dr. Vora), as Chief of Psychiatry at Woodhull Hospital Center (Hospital), seeks an Order authorizing the involuntary treatment of C.H.B. (Patient or Respondent), a patient presently residing on a psychiatric unit at Woodhull Hospital Center, upon the grounds that said patient lacks the capacity to make a reasoned decision to refuse such treatment and that such treatment is in the patient's best interest.
Oral argument occurred on March 12, 2025, during which counsel for petitioner, counsel for respondent, and patient-respondent were present. An oral decision was issued by the Court at the conclusion of the hearing. This decision details the legal basis for such decision.
Background
Petitioner avers that C.H.B. is a 73-year-old female who suffers from a diagnosis of schizophrenia. She was admitted to Woodhull Hospital's psychiatric unit on March 1, 2025 on an [*2]emergency basis pursuant to Mental Hygiene Law (MHL) § 9.39, then continued her stay on an involuntary status on March 7, 2025 pursuant to MHL § 9.27. By affidavit, the patient's treating psychiatrist, Dr. Nisenoff, avers that since the patient's admission to Woodhull, she has been unwilling to comply with treatment, and due to her ongoing psychotic state, has continued to refuse the proposed medications.
Facts
Dr. Cheung, the testifying psychiatrist, testified on behalf of the Hospital in a straightforward and credible manner, and his testimony is credited in its entirety, with the following findings of fact based on such testimony. Dr. Cheung completed a full examination of the patient, reviewed the patient's medical records and consulted with Dr. Nisenoff in preparation for the hearing. Dr. Cheung testified that Dr. Nisenoff was unavailable to testify; no further details were provided regarding her absence.
Dr. Cheung testified that the patient suffers from a diagnosis of schizophrenia, and initially presented at the hospital agitated, screaming, and suffering from various delusions. Dr. Cheung further testified that the patient's current symptoms include switching from isolative and mute one moment, to very psychotic and hostile the next. The patient also expresses paranoid beliefs, and religious and sexual-based delusions. As a result of her paranoid delusions, the patient refuses to eat hospital food because she believes it is poisoned. The doctor noted that the patient takes the prescribed psychiatric medication inconsistently, and has refused insulin and blood sugar checks for diabetes. Her activities of daily living were described as poor.
Dr. Cheung stated that overall, the patient has not shown improvement since arriving at the hospital, and her condition has deteriorated; exhibiting personally threatening behavior and requiring one-to-one observation. Dr. Cheung testified regarding the details of the proposed treatment plan, and opined that in consideration of her psychiatric diagnosis, her medical conditions, and her age, the treatment is in the patient's best interest, the benefits of the treatment outweigh the risks, and the treatment is the least restrictive alternative and is narrowly tailored to the patient's needs.
At the conclusion of Dr. Cheung's testimony, after the Hospital rested, respondent's counsel requested an adverse inference charge due to the Hospital's failure to present the patient's treating psychiatrist as an expert witness.
Adverse Inference Charge: Missing Witness
A missing witness instruction tells a jury that it may "draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events" (People v Hall, 18 NY3d 122, 131 [2011]). Although a party is not required to call any particular person as a witness, the failure to call a certain person as a witness may be the basis for an inference against the party not calling the witness (Zeeck v Melina Taxi Co., 177 AD2d 692, 693 [2d Dept 1991]; see also NY Pattern Jury Instr.Civil 1:75).
The preconditions for the missing witness charge, applicable to both criminal and civil trials, are set out as follows: (1) the witness is available to that party; (2) the witness is expected to give noncumulative testimony; (3) the witness's knowledge is material to the trial; and (4) the witness is under the "control" of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor (Zweben v Casa, 17 AD3d 583, 583 [2d Dept 2005]; also see DeVito v Feliciano, 22 NY3d 159, 165-66 [2013]).
Regarding the application of this rule, Adam K. is particularly instructive. In that case, the psychiatric facility failed to offer the treating psychiatrist for testimony, alleging that while [*3]the treating psychiatrist was present at the hospital, they had chosen not to call the treating psychiatrist as a witness to avoid interfering with the relationship between treating psychiatrist and patient. The court held that there could be no professional or ethical rule preventing a treating psychiatrist from testifying, and ultimately determined that the treating physician was not unavailable to testify (Matter of Adam K. v Iverson, 110 AD3d 168, 174 [2d Dept 2013]; see also Matter of Ladapo, 85 Misc 3d 1235(A) [Sup Ct 2025]). Accordingly, in Adam K., the court concluded that the "missing witness rule" was applicable as the psychiatric center had failed to call an available witness who would be expected to offer noncumulative testimony (id. at 182). The court noted that the treating physician's testimony could hardly be characterized as cumulative as, "[t]he quantity and quality of the information possessed by [the testifying physician and the treating physician] was vastly different" (id.). The court additionally opined that, "a treating psychiatrist, as opposed to reviewing doctors, possesses the greatest knowledge about the patient and information on a material issue raised in the proceeding" (id. at 180).
With regard to the control element of a missing witness instruction, "a treating psychiatrist in the petitioner's employ would normally qualify as an available witness within the petitioner's control" (Matter of Adam K. v Iverson, 110 AD3d 168 [2d Dept 2013]; see also Clarke v Toure, 82 Misc 3d 646 [Sup Ct 2023]).
While the court in Adam K. found that the reviewing psychiatrist's testimony was sufficient to establish that the patient lacked capacity, it ultimately held that the petitioner failed to establish that the proposed treatment was narrowly tailored to protect the patient's liberty interest due to several inconsistencies, and even contradictions, between the records of the petitioner's treating psychiatrist and the testimony of the testifying psychiatrist. The court in Adam K. relied heavily on these discrepancies in granting the missing witness charge and denying the petition (id. at 175).
In the case herein, no testimony was provided regarding Dr. Nisenoff's availability; Dr. Cheung simply stated that Dr. Nisenoff was unavailable to testify, without providing further details. Petitioner also did not offer a reasonable explanation for its failure to call the patient's treating psychiatrist to testify. Thus, the Court finds that petitioner has not proven that the doctor was unavailable within the meaning of case law. Moreover, the Court finds that as treating psychiatrist, Dr. Nisenoff would have been expected to provide more detailed testimony regarding the patient's condition, and could contribute additional information concerning material issues raised in court, thus offering material, as well as noncumulative testimony in favor of petitioner. The Court further finds that Dr. Nisenoff, the treating psychiatrist, was within the Hospital's control, as she was within their employ.
In consideration of applicable case law, and on the basis that counsel for respondent has satisfied all of the elements required for an adverse inference charge, their application is hereby granted.
The adverse inference charge states, in part, that the finder of fact may, although is not required to, draw the strongest inference against the party on that question, to the extent deemed appropriate (DeVito v Feliciano, 22 NY3d 159, 165 [2013]; see also Matter of Adam K. v Iverson, 110 AD3d 168 [2d Dept 2013]; Clarke v Toure, 82 Misc 3d 646 [Sup Ct 2023]; NY Pattern Jury Instr.Civil 1:75). The adverse inference charge in its entirety will be considered by the Court in its final determination.
Treatment Over Objection
Pursuant to Rivers v. Katz, as a threshold matter, the State bears the burden of [*4]demonstrating by clear and convincing evidence the patient's incapacity to make a treatment decision (Matter of Rivers v Katz, 67 NY2d 485 [1986]). Thereafter, if the court concludes that the patient lacks the capacity to determine the course of his own treatment, the State must then establish by clear and convincing evidence that "the proposed treatment is narrowly tailored to give substantive effect to the patient's liberty interest, taking into consideration all relevant circumstances, including the patient's best interests, the benefits to be gained from the treatment, the adverse side effects associated with the treatment and any less intrusive alternative treatments. The State would bear the burden to establish by clear and convincing evidence that the proposed treatment meets these criteria" (id. at 497-98; see also Samuel D. v Mid-Hudson Forensic Psychiatric Ctr., 171 AD3d 1172, 1173 [2d Dept 2019]).
Based on Dr. Cheung's unequivocal and clear testimony, the Court finds that petitioner has proven by clear and convincing evidence that the patient currently suffers from a mental illness, the patient lacks the capacity to make a reasoned decision as to the benefits of the proposed treatment, the treatment is in the patient's best interest, the benefits of the treatment outweigh the risks, and the treatment is the least restrictive alternative and is narrowly tailored to the patient's needs. The petition for Treatment Over Objection is hereby GRANTED.
This constitutes the Decision and Order of the Court.
E N T E R,
Hon. Kerry J. Ward, A.J.S.C.